IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KATHARINA JAKUBIEC,**
on behalf of herself
and all others similarly situated,
   **Plaintiff,**
v.

**SACRED HEART HEALTH**
**SYSTEM, INC.; ASCENSION HEALTH;**
**AMERICAN HOSPITAL ASSOCIATION;**
**AND JOHN DOES 1-10,**
   **Defendants.**
_____/

Case No. 3:04CV274/MCR/MD

**ALISE A. COLLINS,**
on behalf of herself
and all others similarly situated,
   **Plaintiff,**
v.

**BAPTIST HOSPITAL, INC.;**
**AMERICAN HOSPITAL ASSOCIATION;**
**AND JOHN DOES 1-10,**
   **Defendants.**
_____/

Case No. 3:04CV276/MCR/MD

## O R D E R

  These causes are before the court on the motions to dismiss filed by defendants Sacred Heart Health System, Inc., and Ascension Health ("Sacred Heart") (Jakubiec doc. 12) and defendant Baptist Hospital, Inc. ("Baptist") (together, "defendants") (Collins docs. 10, 63).[1]  Baptist has also filed a motion for partial summary judgment and memorandum

---

[1] Because the facts and law applicable to these matters are sufficiently similar, for the purposes of this order only the court consolidates the above entitled and numbered cases.

in support, along with evidentiary materials. (Collins docs. 63, 64, 65). Plaintiffs Katharina Jakubiec ("Jakubiec") and Alise A. Collins ("Collins") (together, "plaintiffs") timely filed responsive memoranda in opposition to the motions to dismiss (Jakubiec doc. 37; Collins docs. 39, 76), and Collins also responded to the motion for partial summary judgment (Collins docs. 73, 74, 76). The court heard oral argument on the motions, and the parties have also filed numerous notices of supplemental authority. For the reasons stated below, the court GRANTS Sacred Heart's and Baptist's motions to dismiss. The court DENIES Baptist's motion for summary judgment as MOOT.[2]

**BACKGROUND**

These are two of dozens of nearly identical class action lawsuits filed in district courts across the United States on behalf of uninsured and indigent patients against various health care entities. In October 2004 the Judicial Panel on Multidistrict Litigation rejected a motion to transfer and consolidate similar cases. See In re Not-for-Profit Hospitals/Uninsured Patients Litigation, 341 F.Supp.2d 1354 (J.P.M.L. 2004). Prior to the initiation of the instant actions Jakubiec was treated in Sacred Heart's emergency room, and Collins was treated in Baptist's emergency room. Jakubiec initiated a civil action on behalf of herself and others similarly situated against Sacred Heart on August 5, 2004; Collins filed essentially the same complaint against Baptist on August 6, 2004.[3] At the heart of the complaints is the plaintiffs' contention that the defendant hospitals, both of which are 26 U.S.C. ¶ 501(c)(3) charitable organizations, charge indigent and/or uninsured patients such as the plaintiffs substantially higher fees than they charge insured patients and that they engage in overly aggressive collection practices. In their initial complaints each of the plaintiffs asserted numerous claims, including third party breach of contract; breach of charitable trust; violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.; constitutional violations under 42 U.S.C. § 1983; violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, et

---

[2] Also pending is Sacred Heart's "Motion to Strike Plaintiff's Seventh Notice of Supplemental Authority," (Jakubiec doc. 82), which shall be denied as moot.

[3] Each plaintiff also originally named the American Hospital Association as a defendant but has since dismissed it by stipulation or notice. (See Jakubiec docs. 74, 80; Collins docs. 82, 87).

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD

seq.; civil conspiracy/concert of action; aiding and abetting; violation of the "Florida Not for Profit Hospital Statute"; unjust enrichment/constructive trust; breach of contract; breach of duty of good faith and fair dealing; and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201-213.  After each defendant filed a motion to dismiss the complaint against it, and Sacred Heart also filed an answer to Jakubiec's complaint, the court stayed the actions and granted the requests for oral argument.  During oral argument the court indicated that it harbored serious concerns about the good faith argument and basis for many of plaintiffs' claims, particularly those implicating alleged violations of § 501(c)(3).[4]  Subsequently, on December 23, 2004, Collins filed the instant amended complaint in which she asserts only the following substantive claims against Baptist: breach of contract (Count One); breach of duty of good faith and fair dealing (Count Two); violation of the FDUTPA (Count Three); violation of the EMTALA (Count Four); and unjust enrichment/constructive trust (Count Five). (Collins doc. 57).  Baptist responded with its second motion to dismiss and motion for summary judgment as to Count Four.  (Doc. 63).  The parties in the Jakubiec case reached an agreement on February 17, 2005, in which they stipulate that of the claims in Jakubiec's initial complaint only the following claims remain[5]:  breach of contract (Count Two); breach of duty of good faith and fair dealing, to the extent it alleges a violation based on payment contracts between the defendant and plaintiff and the putative class (Count Three); violation of the FDUTPA (Count Five); violation of the EMTALA (Count Seven); and unjust enrichment/constructive trust, to the extent it applies to those members of the putative class who have paid defendants amounts for medical services and/or supplies which

---

[4] Numerous federal courts which have addressed these claims have reached a similar conclusion.  As noted in Bobo v. Christus Health, Case No. 1:04-CV-626, * 2-3 (E.D.Tex. April 26, 2005), the plaintiffs in "these copycat cases have not fared well," with no federal court having "found for the plaintiffs on any substantive legal issue."  The Bobo court cited twenty-five district court cases in which the defendants' motions to dismiss had been granted. Id.

[5] See also Jakubiec doc. 80, dismissing as moot Jakubiec's motion to amend her complaint.

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD

exceed what Medicare or private third-party payors would be charged (Count Eight).[6] (Jakubiec doc. 74). The court reads the surviving counts of Jakubiec's initial complaint and Collins' amended complaint as essentially presenting the same claims.[7] Starting with the plaintiffs' sole remaining federal claim, which asserts a violation of the EMTALA, the court proceeds to consideration of the pending motions.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted. As such the court must accept all allegations of the complaint as true and construe those allegations in the light most favorable to the plaintiff. See Lopez v. First Union National Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997); Webb v. Town Council of Town of Hilliard, 766 So. 2d 1241, 1243 (Fla. 1st DCA 2000). A count may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See Lopez, 129 F.3d at 1189. "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." Quality Foods de Centro America v. Latin America Agribusiness Development Corp., 711 F.2d 989, 995 (11th Cir. 1983). Nonetheless, in all cases the plaintiff must not simply make bare assertions of legal conclusions. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

### Violation of the EMTALA

---

[6] Collins' amended complaint also contains one other count involving Baptist, a demand for injunctive/declaratory relief (Count Six). Likewise, Jakubiec's stipulation provides that her claim for injunctive/declaratory relief (Count Nine) against Sacred Heart remains.

[7] Baptist complains that Collins' amended complaint continues to contain allegations regarding the hospital's tax exempt status under § 501(c)(3). (Collins doc. 65 at p. 2). While Baptist is correct in this contention, the court nevertheless takes Collins at her word that "[t]o the extent there are ambiguities in [p]laintiff's claims, [p]laintiff does not intend to state any causes of action under either federal or state tax exemption statutes." (Collins doc. 57, ¶ 71). The court therefore reads any allegations regarding the hospital's tax exempt status in Collins' amended complaint, as well as in Jakubiec's stipulation, as presenting contextual information only.

Making virtually identical allegations in their individual complaints, Collins and Jakubiec allege that before the respective defendant hospital would provide emergency medical screening or treatment to her or class members, it first "analyzed their ability to pay for such medical care and required" them to sign "form contracts" in which they agreed to pay for services rendered in full.  (Jakubiec doc. 1, § 111; Collins doc. 57, § 91).   Collins and Jakubiec maintain that by conditioning any screening or treatment on the "ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given" each of the defendants violated the EMTALA. (Id.).  Baptist and Sacred Heart move for dismissal of plaintiffs' EMTALA claims under Rule 12(b)(6),[8] asserting that the claims fail to allege facts establishing any violation of the statute.  (Jakubiec doc. 13 at p. 29; Collins doc. 11 at p. 11; Collins doc. 65 at p. 15). Baptist also argues that it is entitled to summary judgment as to this count because Collins' claim is barred by the statute's two year limitations period. (Id.).

The EMTALA was enacted to prevent "patient dumping," the practice whereby "private hospital emergency rooms refuse to treat indigent patients by transferring them to public hospitals or turning them away."  Holcomb v. Monahan, 30 F.3d 116, 117 n.2 (11th Cir. 1994). The EMTALA is not a medical malpractice statute. Id. at 117; see also Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cir. 2004); Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (en banc).  Primarily at issue in the instant cases is section 1395dd(a) of the EMTALA, which requires hospitals to provide persons seeking emergency medical treatment with "an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a).[9]  In addition, the hospital "may not delay provision of an appropriate medical

---

[8] In its initial motion to dismiss Baptist also expressly relies on Rule 12(b)(1), asserting that Collins lacks standing to assert her third party breach of contract claim and thus subject matter jurisdiction does not lie; Sacred Heart argues similarly in its motion. As these specific claims – as well as any claims that may be considered to be directly related to them – have been abandoned, the court does not address this defense.

[9] Plaintiffs' allegations do not implicate subsections (b) of the EMTALA (stabilizing treatment for patients presenting with emergency medical conditions); (c) (restricting transfers until the patient is stabilized); (f) (preemption); (g) (nondiscrimination); or (i) (whistleblower protections) .

screening examination . . . or further medical examination and treatment . . . in order to inquire about the individual's method of payment or insurance status." §1395dd(h). Although the statute does not define "appropriate medical screening," the Eleventh Circuit has held that this language "only requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient." Holcomb, 30 F.3d at 117; see also Nolen, 373 F.3d at 1155 (stating that "[s]o long as the Hospital gave to [plaintiff] the same quality screening that it would have given a similarly situated outpatient, there is no violation of the EMTALA.").

>Section 1395dd(d)(2)(A) authorizes civil enforcement of the statute by patients:
>
>Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A).

As an initial matter, the court notes that federal question jurisdiction exists for it to hear plaintiffs' claims under the EMTALA. See Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1563 (11th Cir. 1994) (stating that the EMTALA creates a right of action founded in federal law sufficient to create federal question jurisdiction pursuant to 28 U.S.C. § 1331).

The court shall assume that each plaintiff has adequately alleged that she presented to the respective defendant's emergency department and requested examination or treatment for an emergency medical condition.  Neither plaintiff has alleged, however, that after signing the payment guarantee form she did not receive an "appropriate medical screening examination" for her condition, i.e., one similar to that provided to a non-indigent or insured patient.[10] See Nolen, 373 F.3d at 1155; Holcomb, 30 F.3d at 117. Nor, as this court reads the complaints, has either plaintiff alleged that being required to sign an agreement to pay her medical expenses improperly delayed the receipt of an appropriate

---

[10] Indeed, in the instant cases it appears that the forms which Plaintiffs were required to sign are the very same forms which insured or non-indigent patients must sign prior to their receipt of treatment. (See Jakubiec doc. 65, proposed amended complaint, exhibit 1; Collins doc. 57, exhibit 1).

medical screening or treatment.[11] "Requiring an individual to sign a standard intake form does not violate EMTALA, and hospitals may follow reasonable registration processes, including asking whether the individual is insured." Quinn v. BJC Health System, ___ F.Supp.2d ____, 2005 WL 743517, * 5 (E.D.Mo. March 1, 2005); see also Amato v. UPMC, No. 04-1025, *9 (W.D.Pa. April 21, 2005) (adopting report and recommendation which concluded that the "EMTALA does not forbid a hospital from inquiring into a patient's ability to pay for treatment, so long as its inquiry does not delay screening or treatment"), and 42 C.F.R. § 489.24(d)(4)(iv) (providing in relevant part that "[h]ospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what the insurance is, as long as that inquiry does not delay screening or treatment . . ."). For these reasons, plaintiffs have failed to state a claim under the EMTALA.

Even if the court had concluded that the plaintiffs adequately alleged the violation of § 1395dd(a), however, it finds that their allegations are otherwise insufficient to state a claim under the EMTALA. The "economic injury and other damages" which plaintiffs assert they have suffered simply are not equivalent to the "personal harm" required by § 1395dd(d)(2)(A).[12] Plaintiffs' argument that a showing of economic injury is sufficient under the EMTALA because "personal harm" is not narrowly restricted to physical injury is unavailing. First, while the statute permits recovery for those damages which are available for personal injury under the law of the state in which the hospital is located, under Florida law economic injury does not amount to personal injury. Indeed, well over

---

[11] But see Burton v. William Beaumont Hosp., 347 F.Supp.2d 486 (E.D. Mich. 2004) (finding that similar EMTALA claim making no explicit allegation of delay nevertheless could be read as implicitly asserting delay).

[12] In their memoranda plaintiffs elaborate upon the allegation of "economic injury" presented in their complaints, explaining that it includes injury from "the combination of highly disparate billing rates, conditioning screening medical examinations and treatments upon up-front guarantees to pay unspecified charges (in violation of EMTALA) and aggressive collections efforts based upon these illegally obtained contracts." (Jakubiec doc. 37 at p. 19; Collins doc. 39 at p. 14). At oral argument counsel for plaintiffs indicated that, if given the opportunity, plaintiffs could "factually plead" the personal harm requirement of their EMTALA claims with "enough specificity" to survive a motion to dismiss. (Doc. 61 at p. 90). The court notes that although Collins later filed an amended complaint it contains precisely the same bare-bones allegation of "economic injury and other damages" as did her – and Jakubiec's – initial complaint. Furthermore, Collins' amended complaint still does not explicitly allege any delay in receiving a medical screening examination.

a century ago the Florida Supreme Court defined the limits of personal injury damages, finding that "[t]he damages for personal injuries include, and are limited to, the natural and immediate consequences of the wrongful act. They include . . . (1) expenses of surgical and medical attendance and nursing, and (2) bodily pain . . . ." Florida Ry. & Navigation Co. v. Webster, 5 So. 714, 720 (Fla. 1889) (citation omitted). See also United States Fire Insurance Co. v. Morejon, 338 So.2d 223, 224 (Fla. 3rd DCA 1976) (declining to equate monetary judgment entered in personal injury action with actual personal injury as the judgment was in the nature of collection of a corporate debt); Sabeta v. Baptist Hospital of Miami, Case No. 04-21437-CIV-JORDAN, *16 (S.D.Fla. February 23, 2005) (finding that economic injuries are not personal injuries under Florida law); Jellison v. Florida Hospital Healthcare System, Inc., Case No. 6:04cv-1021-Orl-28KRS, *14 (M.D.Fla. March 14, 2005) (same).

Moreover, plaintiffs' contention that "[n]either the Act nor case law support[s] a double standard where 'personal harm' includes economic damages for hospitals and whistleblowers, but not for patients themselves" merits no weight. (Jakubiec doc. 37 at pp. 19-20; Collins doc. 39 at pp. 14-15). A fair comparative reading of § 1395dd(d)(2)(A) and § 1395dd(d)(2)(B)[13] makes plain that Congress indeed intended to provide two different standards for patients and hospitals. Section 1395dd(d)(2)(A) speaks expressly to recovery for patients who have suffered personal harm whereas § 1395dd(d)(2)(B) explicitly provides for the recovery of economic damages for hospitals which have suffered a financial loss. If it had been Congress' intention that patients be able to recover for economic injuries it would have so provided, as it did with medical facilities. As the United States Supreme Court has stated:

it is an elemental canon of statutory construction that where a statute

---

[13] In fact plaintiffs cite § 1395dd(c)(2)(B) but this appears to be a scrivener's error. Subsection (d)(2)(B), Financial loss to other medical facility, provides:
> Any medical facility that suffers a financial loss as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for financial loss, under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

§ 1395dd(d)(2)(B).

expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'

Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19-20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146, 154-55 (1979) (citations omitted).

Furthermore, plaintiffs' reliance on Fotia v. Palmetto Behavioral Health, 317 F.Supp.2d 638, 644 (D.S.C. 2004), is misplaced. In Fotia, the district court found that a plaintiff claiming retaliatory termination in violation of the EMTALA's whistleblower provision adequately alleged personal harm in the form of economic damage. This court, however, as has at least one other court addressing an uninsured/indigent patient action indistinguishable from the instant matters, concludes that "citations to other EMTALA provisions permitting whistleblowers and hospitals to recover for economic injury are inapposite to determining whether § 1395dd(d)(2)(A) permits recovery for economic injury." Peterson v. Fairview Health Services, 2005 WL 226168, *9 (D. Minn. February 1, 2005). Plaintiffs' citation of Holcomb, supra, likewise does nothing to support their contention that the EMTALA does not require a showing of physical injury. The court noted previously that in Holcomb the Eleventh Circuit held simply that, provided a hospital applies the same screening procedures to indigent patients as it does to non-indigent patients, there is no violation of § 1395dd(a). As discussed above, because plaintiffs have not alleged that defendants screened or treated them differently than other non-indigent or uninsured patients, they have failed to state a violation of § 1395dd(a).[14]

For all of the reasons stated above, the court concludes that plaintiffs' claims against Sacred Heart and Baptist for violation of the EMTALA should be dismissed with prejudice.[15]

---

[14] The court also observes that if it accepted plaintiffs' theory that the EMTALA is, in every instance, violated merely by requiring a patient to sign a payment guarantee prior to his receipt of care, the court in effect would be condoning the patient's intentional refusal to accept responsibility for payment for services rendered. Arguably, this would be equivalent to saying that hospitals must provide free medical care or risk violating the EMTALA. Such a result plainly was not contemplated by Congress in enacting the statute.

[15] As a final note, to this court's knowledge all of the courts which have addressed this specific issue under the EMTALA have determined that economic injuries are insufficient to make a showing of personal harm to a patient. See, e.g., Kolari v. New York-Presbyterian Hospital, 2005 WL 710452 (S.D.N.Y. March 29, 2005); Valencia V. Mississippi Baptist Medical Center, Inc., 363 F.Supp.2d 867(S.D.Miss. 2005); Burton v. William Beaumont Hosp., 347 F.Supp.2d 486 (E.D. Mich. 2004); Wright V. St. Dominic Health Services, Inc.,

Baptist's motion for summary judgment as to this count on the ground Collins' claim is time-barred is DENIED, as moot.

**State Law Claims**

The court next must determine whether a jurisdictional basis exists to support its consideration of plaintiffs' state law claims.[16] The inquiry for this determination pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, is "twofold." See Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966)). First, the court must decide whether it has the power to hear the state law claims. Id.; see also 28 U.S.C. § 1367(a). Second, if such power lies, the court must decide whether in its discretion it will decline to exercise jurisdiction. Id.; see also 28 U.S.C. § 1367(c).

Subsection (a) of § 1367 provides that a district court has supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Eleventh Circuit has observed that "a district court has the power to exercise supplemental jurisdiction over all claims that 'arise out of a common nucleus of operative fact with a substantial federal claim.'" Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1223 (11th Cir. 1999). In the court's assessment of whether a federal claim is sufficiently substantial, the issue is 'not whether the claims are without merit but whether the prior decisions inescapably render the claims frivolous.'" L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 427 (11th Cir.

---

2005 WL 743339 (S.D.Miss.March 1, 2005); Peterson v. Fairview Health Services, 2005 WL 226168 (D.Minn. February 1, 2005); Kizzire v. Baptist Health System, Inc., 343 F.Supp.2d 1074 (N.D.Ala. 2004); Amato v. UPMC, No. 04-1025 (W.D.Pa. April 21, 2005); Sabeta v. Baptist Hospital of Miami, Case No. 04-21437-CIV-JORDAN (S.D.Fla. February 23, 2005); Jellison v. Florida Hospital Healthcare System, Inc., Case No. 6:04cv-1021-Orl-28KRS (M.D.Fla. March 14, 2005).

[16] At oral argument the court indicated that it was inclined, in its discretion, to exercise supplemental jurisdiction over plaintiffs' state law claims. At that time, however, based on the nature of the claims before it the court had no reason to question whether it had the power to do so. Collins has since filed her amended complaint (and Jakubiec her stipulation), both of which eliminate the majority of the previous bases for original jurisdiction. Presently before the court are only the plaintiffs' EMTALA claims – which, upon thorough review, the court has found sorely lacking – and their four substantive state law claims. Accordingly, the court is compelled to address the issue of supplemental jurisdiction in some depth and to make the following findings.

1984) (quotation omitted). The Eleventh Circuit has found a common nucleus of operative facts when both the federal and state claims arise from the same events and involve "the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." Palmer, 22 F.3d at 1563-64; see also Hudson v. Delta Air Lines Inc., 90 F.3d 451, 455 (11th Cir. 1996) (citing Palmer); Lucero v. Trosch, 121 F.3d 591 (11th Cir. 1997) (noting that claims had a common nucleus of operative fact because they relied on the identical actions of the defendants).

In the instant cases, the court is persuaded that plaintiffs' EMTALA claims do not present a substantial federal question. The plain language of the statute; the Eleventh Circuit's holdings in Nolen, Holcomb, and Harry; and the long-established law of Florida which does not define economic injury as personal injury suggest to this court that plaintiffs' claims under the EMTALA were so untenable from the outset as to be frivolous.[17] Moreover, at the time Collins filed her amended complaint in December 2004 – and Jakubiec filed the stipulation in February 2005 presenting the same single federal claim under the EMTALA – numerous federal district courts which have considered the arguments presented here had, in whole or part, soundly rejected them.[18] See, e.g., Peterson v. Fairview Health Services, 2005 WL 226168 (D.Minn. February 1, 2005); Kizzire v. Baptist Health System, Inc., 343 F.Supp.2d 1074 (N.D.Ala. 2004); Burton v. William Beaumont Hosp., 347 F.Supp.2d 486 (E.D. Mich. 2004); Amato v. UPMC, No. 04-1025 (W.D.Pa. November 23, 2004, date of entry of report and recommendation). Thus, even though their arguments in support of the EMTALA claims had consistently met with defeat in other district courts, plaintiffs persisted in presenting the very same claims and arguments to this court.

---

[17] In addition, although the court has denied as moot Baptist's motion for summary judgment on Collins' EMTALA claim, it notes that there is no dispute that Collins received treatment in Baptist's emergency room on May 16, 2002. Thus, in initiating her complaint in August 2004, Collins filed the instant EMTALA claim after the two-year statute of limitations period established in the statute had expired. See 42 U.S.C. § 1395dd(d)(2)(C). The court finds no basis for Collins' contention that the "allegations of the [c]omplaint readily raise substantial issues of fact concerning the doctrines of equitable tolling and equitable estoppel." (Collins doc. 39 at p.17, n.17).

[18] Whether subject matter jurisdiction exists is measured as of the time the complaint was filed. Baggett, 117 F.3d at 1252.

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD

Even assuming that plaintiffs' EMTALA claims present a substantial federal question, the court concludes that they do not share a common nucleus of operative facts with the state law claims sufficient to support supplemental jurisdiction.[19] As noted above, plaintiffs currently assert four substantive state law claims: breach of contract, breach of duty of good faith and fair dealing, violation of the FDUTPA, and unjust enrichment/constructive trust.[20] The alleged events giving rise to plaintiffs' EMTALA claims involve the signing by Collins and Jakubiec of an agreement to pay for their medical treatment at the time they presented for emergency medical care. The central question – and focus of the factual inquiry – in a claim under § 1395dd(a) of the EMTALA is whether the hospital provided an indigent or uninsured patient "with a medical screening similar to one which they would provide any other patient." Holcomb, 30 F.3d at 117. The facts underlying plaintiffs' state law claims, however, are not sufficiently related to the events surrounding the entering into of the agreement. Rather, the state law claims are related to subsequent events which pertain to defendants' billing and collection practices. The factual focus in these claims is centered on the process by which defendants calculated charges for services under the agreement and the manner in which defendants sought to collect the debts for those charges. Accordingly, any proceedings for the federal

---

[19] The court determines its power to entertain state claims based on the pleadings. See Gibbs, 373 U.S. at 727-28.

[20] Plaintiffs allege in their breach of contract claims that defendants breached an imputed contractual obligation to charge "no more than a fair and reasonable" amount for the medical care provided by charging the "highest and full undiscounted cost for medical care." According to plaintiffs, the amounts defendants charged were "unfair, unreasonable, and bear no relation to the actual cost of providing such services." (Jakubiec doc. 1, § 27; Collins doc. 57, § 19). Plaintiffs also allege that defendants had a duty of good faith and fair dealing which they breached by "failing to provide emergency room medical care . . . without regard to [ ] ability to pay for such care; charging . . . the highest and full undiscounted cost of medical care; charging . . . a higher amount for medical services than [ ] insured patients . . . [were charged] for the same services; [and] utilizing aggressive, abusive, and harassing collections practices . . . to collect such outstanding grossly inflated medical debt . . . . " (Jakubiec doc. 1, § 92; Collins doc. 57, § 81).
In their FDUTPA claims, plaintiffs allege that defendants charged them "inflated" rates for medical services and attempted to collect such debt through "aggressive, abusive, and harassing" practices, which conduct is "unfair, discriminatory, unconscionable, unethical, immoral, and oppressive." (Jakubiec doc. 1, §§ 101, 102; Collins doc. 57, §§ 85, 86). Finally, plaintiffs assert that defendants' alleged conduct has resulted in defendants' unjust enrichment. Plaintiffs assert that they are thereby entitled to damages in the form of the imposition of a constructive trust on certain of defendants' assets and profits. (Jakubiec doc. 1, §§ 114, 116; Collins doc. 57, §§ 94, 96).

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD

claims and state law claims would largely involve different witnesses, the presentation of different evidence (although as to both the federal and the state law claims the document itself likely would be offered into evidence), and the determination of different facts. See Palmer, 22 F.3d at 1563-64; see also Ferguson v. Centura Health Corp., 358 F.Supp.2d 1014, 1020 (D.Col. 2005) (finding relationship of EMTALA claim to state law claims insufficient to support supplemental jurisdiction). For these reasons, the court concludes that it does not have the power under 28 U.S.C. §1367(a) to hear plaintiffs' state law claims.

Alternatively, even assuming that the court does have the power to entertain plaintiffs' state law claims, it declines to do so under the present circumstances. Pursuant to 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, both in number and substance the state law claims, as presented in Collins' amended complaint and Jakubiec's stipulation, substantially predominate over the EMTALA claims. Moreover, in each of the cases the court has dismissed the only claim over which it has original jurisdiction. Accordingly, the court is obliged to weigh such factors as judicial economy, convenience, fairness, and comity in determining whether it should retain jurisdiction over the state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

In the instant cases, which have been stayed and in which no discovery has yet been conducted, significant resources have not yet been expended by the court (or the parties). Thus judicial economy weighs in favor of the court's declining to exercise supplemental jurisdiction. Comity considerations also weigh in this direction: the resolution of plaintiffs' state law claims depends on determinations of state law, and the Florida courts should be the final arbiters of Florida law. See Hardy v. Birmingham Bd. of Educ., 954 F.2d 1546, 1553 (11th Cir. 1992). Furthermore, as a fairness matter, it appears that none of plaintiffs' state law claims would be time-barred.[21]  See Fla.Stat. § 95.11.

The dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial. See Baggett, 117 F.3d at 1353; see also Carnegie-Mellon Univ., 484 U.S. at 350 n.7 (stating that "[w]hen federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Therefore, for all of the foregoing reasons, this court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, which shall be dismissed without prejudice.[22] See Crosby, 187 F.3d at 1352.

ACCORDINGLY, it is ORDERED:

1.     Sacred Heart's motion to dismiss (doc. 12) is GRANTED, as follows:

Count Seven, Jakubiec's federal law claim pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, et seq. is DISMISSED, with prejudice.

Jakubiec's remaining state law claims, Count Two (breach of contract); Count Three (breach of duty of good faith and fair dealing); Count Five (violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201-213); Count Eight (unjust enrichment/constructive trust); and Count Nine (injunctive/declaratory relief) are DISMISSED, without prejudice.

---

[21] See Jakubiec doc. 65, proposed amended complaint, exhibit 1, which indicates that Jakubiec presented for treatment at Sacred Heart on April 3, 2004.

[22] The court expresses no opinion on the merits of plaintiffs' state law claims.

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD

2.      Sacred Heart's "Motion to Strike Plaintiff's Seventh Notice of Supplemental Authority" (doc. 82), is DENIED as moot.

3.      Baptist's motions to dismiss (docs. 10, 63) are GRANTED, as follows:

Count Four, Collins' federal law claim pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, et seq., is DISMISSED, with prejudice.

Collins' remaining state law claims, Count One (breach of contract); Count Two (breach of duty of good faith and fair dealing); Count Three (violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201-213); Count Five (unjust enrichment/constructive trust); and Count Six (injunctive/declaratory relief) are DISMISSED, without prejudice.

4.      Baptist's motion for summary judgment as to Count Four (doc. 63) is DENIED, as moot.

5.      The clerk shall ENTER judgment accordingly and CLOSE these cases.

**DONE and ORDERED** this 26th day of May, 2005.

                                                                         s/ *M. Casey Rodgers*
                                                                   **M. CASEY RODGERS**
                                                              **UNITED STATES DISTRICT JUDGE**

Case Nos. 3:04cv274/MCR/MD and 3:04cv276/MCR/MD